## IN THE UNITED STATES DISTRICT COURT FOR THE WESTERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| PAVEL MARKEVICH, | ) |
| | ) |
| Petitioner, | ) |
| | ) |
| v. | ) |
| | ) |
| FRED FIGUEROA, WARDEN | )  Case No. CIV-26-767-J |
| DIAMONDBACK | ) |
| CORRECTIONAL FACILITY, et | ) |
| al.,[1] | ) |
| | ) |
| Respondents. | ) |

## <u>REPORT AND RECOMMENDATION</u>

Petitioner Pavel Markevich, a noncitizen proceeding pro se,[2] seeks a writ

of habeas corpus under 28 U.S.C. § 2241. Docs. 10, 11.[3] United States District

Judge Bernard M. Jones, II referred the case to the undersigned Magistrate

Judge for initial proceedings under 28 U.S.C. § 636(b)(1)(B), (C). Doc. 6. The

---

[1]    Fred Figueroa, Warden of the Diamondback Correctional Facility, is not a federal official and the response was not filed on his behalf. Doc. 16, at 1 n.1.

[2]    This Report and Recommendation "uses the term 'noncitizen' as equivalent to the statutory term 'alien.'" *Nasrallah v. Barr*, 590 U.S. 573, 578 n.2 (2020) (citing 8 U.S.C. § 1101(a)(3)). Because Petitioner is proceeding pro se, the Court liberally construes his arguments. *Hall v. Bellmon*, 935 F.2d 1106, 1110 (10th Cir. 1991). But it is not "the proper function of the district court to assume the role of advocate for the pro se litigant." *Id.*

[3]    Citations to a court document are to its electronic case filing designation and pagination. Except for capitalization, quotations are verbatim unless otherwise indicated.

Government responded, Doc. 16, and Petitioner replied. Doc. 20. So the matter is at issue.

For the reasons below, the undersigned recommends the Court grant Petitioner's amended habeas petition in part and order his immediate release subject to the same conditions that governed his earlier release.

## I.   Factual background and procedural history.

Petitioner is a citizen of Belarus who entered the country on or about January 7, 2023. Doc. 11, at 4. At some point, the Department of Homeland Security (DHS) issued a Notice to Appear (NTA), placed him into removal proceedings, and released him on his own recognizance. *See id.*[4] In February 2023, Petitioner filed an application for asylum. *Id.* He states he is a highly skilled professional, has never attempted to evade legal process, and has actively participated in every stage of litigation proceedings. *Id.* He states he

---

[4]   Petitioner refers to an "I-220A" order of release. Doc. 11, at 4. This form is generally titled an "Order of Release on Recognizance" and "is an official order issued by an authorized immigration officer '[i]n accordance with section 236 of the Immigration and Nationality Act [8 U.S.C. § 1226] and the applicable provisions of Title 8 of the Code of Federal Regulations.' It permits a noncitizen to be released from custody without payment of a bond, based on the individual's written promise to appear at all immigration proceedings and to comply with specified conditions, such as regular reporting, notification of any change of address, and refraining from committing new crimes." *Aroca v. Mason*, 819 F. Supp. 3d 517, 529 n.12 (S.D. W. Va. 2026).

pays his taxes, and that he and his wife own a home in Texas. *Id.* He has three minor children enrolled in schools in Texas. *Id.*

On March 20, 2026, Petitioner reported for his annual check-in, and Immigration & Customs Enforcement (ICE) detained him without warning or a change in circumstances. *Id.* at 2, 6. He states his detention has caused a catastrophic psychological breakdown for his wife. *Id.*

Petitioner's removal proceedings appear to be ongoing. *See* https://acis.eoir.justice.gov/en/caseInformation (last visited July 22, 2026). An Immigration Judge (IJ) "granted an application" on July 2, 2026. *Id.* An appeal of the decision is due by August 3, 2026. *Id.*

## II.    Petitioner's claims.

Petitioner raises four grounds for relief:

1. Violation of the Due Process Clause of the Fifth Amendment;

2. He is neither a risk of flight nor a danger to the community;

3. Abuse of discretion under the Administrative Procedure Act (APA); and

4. Irreparable harm to his family and medical necessity.

Doc. 11, at 7-8; *see also* Doc. 10, at 7.

He seeks his immediate release under appropriate supervision, or, in the alternative, a prompt individualized bond hearing within seven days, where

3

the Government bears the burden to prove danger or flight risk by clear and convincing evidence; a declaration that his continued detention violates the Due Process Clause of the Fifth Amendment and is unauthorized under the Immigration & Nationality Act (INA); an order enjoining Respondents from transferring him out of this district while his action is pending;[5] and reasonable attorney's fees and costs under the Equal Access to Justice Act.[6] Doc. 11, at 9.

## III.    Standard of review.

An application for a writ of habeas corpus "is an attack by a person in custody upon the legality of that custody, and . . . the traditional function of the writ is to secure release from illegal custody." *Preiser v. Rodriguez*, 411 U.S. 475, 484 (1973). Habeas corpus relief is warranted only if the petitioner "is in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2241(c)(3). "Challenges to immigration detention are properly brought directly through habeas." *Soberanes v. Comfort*, 388 F.3d

---

[5]    The Court addressed this request in its Order for a Response, Doc. 14.

[6]    Petitioner is proceeding pro se, so he cannot recover attorney fees under the EAJA. *See Demarest v. Manspeaker*, 948 F.2d 655 (10th Cir. 1991) ("[A]ttorney fees are not available for pro se litigants under the EAJA."). He may seek costs at the conclusion of this matter, if the Court finds such an award appropriate.

4

1305, 1310 (10th Cir. 2004) (citing *Zadvydas v. Davis*, 533 U.S. 678, 687-88 (2001)).

## IV. Discussion.

### A.    8 U.S.C. § 1226 governs Petitioner's detention.

Respondents argue they are properly holding Petitioner under 8 U.S.C. § 1225(b)(2)(A),[7] not § 1226. Doc. 16, at 1-2. But Petitioner entered the country over three years ago, and Respondents placed him into standard removal proceedings under § 1226(a). Doc. 11, at 4.

Section 1226 governs "the usual removal process." *Salcedo Aceros v. Kaiser*, 2025 WL 2637503, at *1 (N.D. Cal. Sept. 12, 2025) (quoting *Dep't of Homeland Sec. v. Thuraissigiam,* 591 U.S. 103, 108 (2020)). The § 1226 process starts when the Government files an NTA with an immigration court. *Id.* Section 1226 then lets the Government arrest and detain noncitizens or release them on bond or on conditional parole. 8 U.S.C. § 1226(a). Release is required if the noncitizen can show they are not a danger and will show up at future hearings. *Salcedo Aceros*, 2025 WL 2637503, at *1 (citing *Diaz v. Garland*, 53

---

[7]    Section 1225(b)(2) mandates detention for noncitizens who are "applicant[s] for admission, [where] the examining immigration officer determines that [the noncitizen] seeking admission is not clearly and beyond a doubt entitled to be admitted." 8 U.S.C. § 1225(b)(2)(A).

F.4th 1189, 1196 (9th Cir. 2022), and 8 C.F.R. § 236.1(c)(8)). If detention continues, the noncitizen gets a bond hearing before an IJ. *Id.* To be released, noncitizens must show by a preponderance of the evidence that they are not a security threat, community danger, or flight risk. *Id.*

The initial decision to pursue Petitioner's detention "under § 1226(a) precludes the Government from later 'switch[ing] tracks' to subject him to mandatory detention under [8 U.S.C.] § 1225(b)(2)." *Gutierrez v. Chesnut*, 2025 WL 3514495, at *5 (E.D. Cal. Dec. 8, 2025) (citing *Salcedo Aceros*, 2025 WL 2637503, at *8). The rule is simple: "Sections 1226(a) and 1225(b) cannot be applied simultaneously." *Salcedo Aceros,* 2025 WL 2637503, at *8.

The Court should conclude that § 1226(a) governs Petitioner's detention.[8]

---

[8]    Petitioner's asylum request does not change this outcome. This Court has "declined to find" that either refusing to voluntarily depart or seeking asylum "'constitutes 'seeking admission' for purposes of this subsection.'" *Malacidze v. Noem*, No. CIV-25-1527-D, 2026 WL 227155, at *3 (W.D. Okla. Jan. 28, 2026) (quoting *Cruz-Hernandez v. Noem*, No. CIV-25-1378-D, 2026 WL 18932, at *1 (W.D. Okla. Jan. 2, 2026)); *see also Hernandez Alvarez v. Warden, Fed. Det. Ctr*, 175 F.4th 1258, 1284 (11th Cir. 2026) ("This argument fails at the gate. Section 1225(b)(2)(A) makes it clear that an applicant for admission's status as one 'seeking admission' becomes relevant upon examination by an immigration officer, which occurs *before* a § 1229a proceeding even commences." (quoting 8 U.S.C. § 1225(b)(2)(A))).

## B.   Petitioner is entitled to relief under § 1226(a).

When ICE detained Petitioner after he had resided in the country for three years, he was not subject to mandatory detention under § 1225(b)(2)(A). Respondents released Petitioner under § 1226. Petitioner is entitled to retain the legal protections under § 1226(a), and Respondents cannot erase them by simply "switching tracks." *Salcedo Aceros*, 2025 WL 2637503, at *8; *Briceno Solano v. Mason*, 2026 WL 311624, at *14 (S.D.W. Va. Feb. 4, 2026).

To release Petitioner, DHS had to determine that he "would not pose a danger to property or persons," and that he was "likely to appear for any future proceeding." 8 C.F.R. § 236.1(c)(8). For three years after he was released on his own recognizance, Petitioner lived freely in this country. During that period, he complied with all immigration requirements, obtained a work permit, pursued his asylum application, obtained a job, purchased a home, and incurred no criminal convictions. Respondents identify no change in circumstances that required revocation of Petitioner's conditional release. So he is entitled to release. *See, e.g.*, *Barbosa da Cunha v. Freden,* 175 F.4th 61, 70 (2d Cir. 2026) (concluding the petitioner's detention was "governed by Section 1226(a), not Section 1225(b)(2)(A)," and explaining that its holding "allows noncitizens . . . who are already present in the United States and are

7

determined not to be a flight risk or danger to the community to be released on bond under Section 1226(a) while their removal proceedings are pending").

### C.    Petitioner's due process claim.

Petitioner asserts that Respondents have violated his due process rights by detaining him. Doc. 11, at 7. He argues he is neither a flight risk nor a danger to the community, and Respondents have not provided him with an individualized justification for his detention. *Id.* Liberally construing these claims, the undersigned finds he has raised a procedural due process claim.

"The Fifth Amendment's Due Process Clause forbids the Government to deprive any person of liberty without due process of law. Freedom from imprisonment—from government custody, detention, or other forms of physical restraint—lies at the heart of the liberty that Clause protects." *Zadvydas,* 533 U.S. at 690 (internal quotation marks and alterations omitted); *cf. Trump v. J.G.G.,* 604 U.S. 670, 673 (2025) ("It is well established that the Fifth Amendment entitles aliens to due process of law in the context of removal proceedings." (internal quotation marks omitted)).

"The INA establishes procedures for removing [and detaining noncitizens] living unlawfully in the United States." *Johnson v. Guzman Chavez,* 594 U.S. 523, 527 (2021); *see Johnson v. Arteaga-Martinez,* 596 U.S. 573, 578 (2022) ("The INA establishes procedures for the Government to use

8

when removing certain noncitizens from the United States and, in some cases, detaining them.").

This Court analyzes Petitioner's procedural due process claim to determine whether he has a protected liberty interest, and what process is necessary to ensure any deprivation of that liberty interest aligns with the Due Process Clause of the Fifth Amendment. *See Ky. Dep't of Corr. v. Thompson*, 490 U.S. 454, 460 (1989). In examining the necessary process, the Court turns to the three factors set forth in *Mathews v. Eldridge*: (1) "the private interest that will be affected by the official action"; (2) "the risk of an erroneous deprivation of such interest through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards"; and (3) "the Government's interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirement would entail." 424 U.S. 319, 335 (1976).

"When the [G]overnment grants [a noncitizen] parole into the country, it creates a liberty interest intimately tied to freedom from imprisonment." *Sanchez v. LaRose*, 2025 WL 2770629, at *3 (S.D. Cal. Sept. 26, 2025); *see also Iza v. Arnott*, 2026 WL 67152, at *3 (W.D. Mo. Jan. 8, 2026) ("Individuals released on parole or other forms of conditional release have a liberty interest in their 'continued liberty.'" (quoting *Morrissey v. Brewer*, 408 U.S. 471, 482

9

(1972))); *Sahil v. De Anda-Ybarra*, 2026 WL 560216, at \*3 (D.N.M. Feb. 27, 2026) (finding "that noncitizens acquire a liberty interest once released from immigration detention"). Petitioner's interest in physical freedom "is the most elemental of liberty interests." *Hamdi v. Rumsfeld*, 542 U.S. 507, 529 (2004); *see also Zadvydas*, 533 U.S. at 690 (stating that an individual's interest in being free from detention "lies at the heart of the liberty that [the Due Process] Clause protects"). Respondents deprived Petitioner of his protected status when ICE detained him and placed him into custody.

Turning to the *Mathews* factors, the Court finds that Petitioner has a significant private interest in remaining free from detention after spending over three years in the United States before his present detention. By initially releasing Petitioner on his own recognizance, the Government necessarily determined that he "would not pose a danger to property or persons," and he "would likely appear for any future proceedings." 8 C.F.R. § 236.1(c)(8). Respondents have presented no evidence that there was a change in this assessment. By permitting Petitioner to remain at liberty for three years following his release, the Government enabled Petitioner to develop a protected liberty interest in remaining out of custody. To be sure, "Congress may make rules as to aliens that would be unacceptable if applied to citizens." *Demore v. Kim*, 538 U.S. 510, 522 (2003). But that power remains "subject to important

10

constitutional limitations." *Zadvydas*, 533 U.S. at 695. And it does not erase Petitioner's significant interest in remaining free from detention.

Respondents do not suggest Petitioner violated any laws while in the United States. During his release, Petitioner's interest in release grew even stronger as he worked, raised a family, and presumably "form[ed] the other enduring attachments of normal life." *Morrissey*, 408 U.S. at 482. The first *Mathews* factor favors Petitioner.

Second, the Court considers "the risk of an erroneous deprivation of such interest through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards." *Mathews*, 424 U.S. at 335. The risk of an erroneous deprivation of Petitioner's liberty interest is considerable where he was detained without notice or a hearing.

"Constitutionally inadequate notice also often leads to constitutionally inadequate opportunity to be heard, because opportunity to be heard must be meaningful to be constitutionally sufficient." *Saqib v. Andrews*, 2026 WL 350830, at *6 (E.D. Cal. Feb. 9, 2026), *adopted*, 2026 WL 440566 (E.D. Cal. Feb. 17, 2026). Respondents detained Petitioner with no procedural safeguards to determine whether the revocation of his release was justified. This factor weighs in Petitioner's favor. *See, e.g., E.A. T.-B. v. Wamsley*, 795 F. Supp. 3d 1316, 1322 (W.D. Wash. 2025) ("That the Government may believe it has a

11

valid reason to detain Petitioner does not eliminate its obligation to effectuate the detention in a manner that comports with due process.").

Finally, the Court considers the Government's interest, including any fiscal or administrative burdens. *Mathews*, 424 U.S. at 335. "While this Court recognizes that the [G]overnment has an interest in enforcing immigration laws," the Government's interest in arresting Petitioner without a determination whether he posed a risk of flight or danger is low. *Saqib*, 2026 WL 350830, at *6; *see, e.g.*, *Diaz v. Kaiser*, 2025 WL 1676854, at *3 (N.D. Cal. June 14, 2025) ("[T[he Court concludes that the [G]overnment's interest in re-detaining Petitioner . . . is 'low,' particularly in light of the fact that Petitioner[] has long complied with his reporting requirements."). And the Court can discern no significant administrative or fiscal burden associated with placing the burden on the Government to follow its own laws and regulations. *See, e.g.*, *Iza,* 2026 WL 67152, at *3 ("An alien's opportunity to be heard regarding the revocation of his parole is only meaningful if the [G]overnment comports with its own internal standards regarding parole revocation."). This is especially true given that Petitioner's detention was not deemed necessary for over three years.

### D.    Remedy.

Habeas is "a remedy for unlawful executive detention." *Munaf v. Geren*, 553 U.S. 674, 693 (2008). "The typical remedy for such detention is, of course, release." *Id.*; *see also Dep't of Homeland Sec. v. Thuraissigiam*, 591 U.S. 103, 107 (2020) ("Habeas has traditionally been a means to secure release from unlawful detention."). Federal district courts have broad equitable powers to craft habeas relief. *Burton v. Johnson*, 975 F.2d 690, 693 (10th Cir. 1992). District courts have the power and authority to dispose of habeas corpus matters "as law and justice require." 28 U.S.C. § 2243; *see also United States v. Allen*, 139 F.3d 913 (10th Cir. 1998) ("If the imprisonment cannot be shown to conform with the fundamental requirements of law, the individual is entitled to his immediate release." (quoting *Johnson v. Rogers*, 917 F.2d 1283, 1284 (10th Cir. 1990))).

The undersigned finds that the misapplication of the INA and the ongoing violation of Petitioner's due process rights require his immediate release from custody, subject to the same conditions of his earlier release.[9]

---

[9]    "Many orders in similar cases require that a bond hearing be set in a short period of time with an automatic release if the hearing does not occur. But those cases do not examine the effect of a successful asylum petition or a clear conditional release order under § 1226." *Velasquez Montillo v. Brooksby*, 2026 WL 592355, at *10 (D. Utah Mar. 3, 2026).

13

Numerous courts across the country have ordered immediate release in similar circumstances.[10]

### E.    The Court should decline to address Petitioner's remaining claims.

Given the undersigned's recommendation as to the disposition of Petitioner's INA and due process claims, the undersigned recommends the Court decline to address the merits of Petitioner's remaining claims.

## V.    Recommendation and notice of right to object.

For the reasons set forth above, the undersigned recommends the Court **grant in part** Petitioner's habeas petition and **order Respondents to immediately release him from custody subject to the same conditions**

---

[10]    *See Singh v. Noem*, 2026 WL 766228, at *10 (D.N.M. Mar. 18, 2026) ("Petitioner's . . . release is required to remedy the ongoing due process violation caused by Petitioner being detained while his conditional parole has not yet been terminated."); *Velasquez Montillo*, 2026 WL 592355, at *10 (concluding immediate release was the appropriate remedy where "there has been no notice of a change in circumstances requiring modification of the November 2021 [order of release on recognizance]"); *Vielma Uzcategui v. Brooksby*, 2026 WL 622751, at *13 (D. Utah Mar. 5, 2026) (same as to petitioner ordered released on her own recognizance in September 2023); *Murzi v. Noem*, 2026 WL 395111, at *2 (D. Colo. Feb. 12, 2026) (ordering petitioner's immediate release where petitioner had previously been released on parole); *cf. Vikash v. Gant*, No. CIV-26-816-J, 2026 WL 1984342, at *1 (W.D. Okla. July 9, 2026) (ordering the respondents to "immediately RELEASE Petitioner from custody subject to the same conditions that governed his earlier parole").

**that governed his earlier release.**[11] **The undersigned also recommends that the Court order Respondents to certify compliance with the Court's order by filing a status report within ten business days of the Court's order**, and to promptly provide a copy of this order to counsel for the Warden of the Diamondback Correctional Facility. Finally, the Court should order that the Government may not re-detain Petitioner without notice and a pre-deprivation hearing before a neutral decision-maker, where the Government bears the burden of proving, by clear and convincing evidence, that Petitioner is a flight risk and a danger to the community.

---

[11]    The Court could determine that a bond hearing is the only necessary remedy. *See, e.g.*, *Santillan Quiroz v. Mullin*, No. 26-6019, 2026 WL 1876709, at \*5 (10th Cir. June 30, 2026) ("We hold that noncitizens who entered the United States and were thereafter detained in the interior of the country are usually subject to § 1226(a) (and thus eligible for bond), not § 1225(b)(2)(A)."). If so, the undersigned recommends that, given Petitioner's prolonged detention under the incorrect statute, the Court should find that it is more appropriate for the Government to bear the burden of proof in this context. *See, e.g.*, *Garcia Cortes v. Noem*, 2025 WL 2652880, at \*5 (D. Colo. Sept. 16, 2025) (placing the burden of proof on the Government to justify the petitioner's continued detention (citing *L.G. v. Choate*, 744 F. Supp. 3d 1172, 1185 (D. Colo. 2024)). Having released Petitioner in 2023, the Government ought to now bear the burden of proving by clear and convincing evidence that Petitioner poses a danger to the community or a risk of flight such that he should remain in detention. *See L.G.*, 744 F. Supp. 3d at 1186 ("In general, the Supreme Court has held that the clear and convincing standard applies to civil detention where liberty is at stake." (first citing *United States v. Salerno*, 481 U.S. 739, 751 (1987), and then citing *Addington v. Texas*, 441 U.S. 418, 433 (1979))).

The undersigned advises the parties of their right to file an objection to this Report and Recommendation with the Clerk of this Court by July 29, 2026, in accordance with 28 U.S.C. § 636 and Federal Rule of Civil Procedure 72.[12] The undersigned further advises the parties that failure to make timely objections to this Report and Recommendation waives the right to appellate review of both factual and legal questions contained herein. *Moore v. United States*, 950 F.2d 656, 659 (10th Cir. 1991). This Report and Recommendation disposes of the issues referred to the undersigned Magistrate Judge in the captioned matter.

**ENTERED** this 22nd day of July, 2026.

_____
SUZANNE MITCHELL
UNITED STATES MAGISTRATE JUDGE

---

[12]    Given the expedited nature of these proceedings, the undersigned has reduced the typical objection time to this Report and Recommendation. *See* Fed. R. Civ. P. 72(b)(2) advisory committee's note to 1983 addition (noting that rule establishing 14-day response time "does not extend to habeas corpus petitions, which are covered by the specific rules relating to proceedings under Sections 2254 and 2255 of Title 28."); *see also Whitmore v. Parker,* 484 F. App'x 227, 231, 231 n.2 (10th Cir. 2012) ("The Rules Governing § 2254 Cases may be applied discretionarily to habeas petitions under § 2241" and that "while the Federal Rules of Civil Procedure may be applied in habeas proceedings, they need not be in every instance – particularly where strict application would undermine the habeas review process").